UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
SANTA CORTESIANO,                                    Civil Docket No.
                    Plaintiff,


                                                     **COMPLAINT**
          -against-
                                                     **JURY TRIAL DEMANDED**


RIDGEWOOD BUSHWICK SENIOR
CITIZEN HCC Inc. and GLENMORE MATHEWS,

                         Defendants.
-------------------------------------------------------------------X

Plaintiff, SANTA CORTESIANO, ("Cortesiano" and "Plaintiff") by and through

her attorneys, The Aboushi Law Firm, PLLC, complaining of the defendants, respectfully

alleges as follows:

## I. PRELIMINARY STATEMENT

1. Plaintiff, brings this action for monetary damages against the defendants for

    unlawful discrimination, harassment and retaliation against the plaintiff on the

    basis of age and disability under the Age Discrimination in Employment Act of

    1967, 29 U.S.C. § 621 et seq., as amended in 1986 and 1991 (hereafter "ADEA");

    the Americans with Disabilities Act; the New York State Executive Law §296

    ("Executive Law"); the New York City Administrative Code §8-502 et seq.; the

    Human Rights Law of the City of New York of 1991 (hereafter "HRL"), Section

    8-502; and for Intentional and Negligent Infliction of Emotional Distress.

2. For twenty-seven years Mrs. Cortesiano tirelessly worked for Defendant

    Ridgewood as a patient care coordinator. Mrs. Cortesiano is hearing disabled,

    diabetic and has fibromyalgia. She has suffered from the aforementioned ailments

for the past ten (10) years and has worked at Ridgewood while suffering from said ailments without issue.

3.   In 2012 Ridgewood hired Glenmore Mathews ("Mathews"), its new Director, and Mathews immediately fired four employees due to their old age. Mathews then turned attention to Plaintiff.

4.   Mathews subjected Plaintiff to humiliating, offensive and discriminatory conduct due to her age and disability.

5.   As a result of the foregoing, Plaintiff SANTA CORTESIANO sustained and continues to sustain to date, *inter alia*, mental injuries, emotional distress, embarrassment, temporary deprivation of property, humiliation, and deprivation of her constitutional rights.

6.   On or about June 2015, Cortesiano filed a timely Charge of Discrimination with the United States Equal Employment Opportunity Commission ("*EEOC*"), charge number 520-2015-029424.

7.   Plaintiff timely brings this action within ninety (90) days of the receipt of a Notice of Right to Sue Letter, issued by the EEOC on December 1, 2015.

## II. JURISDICTION

8.   This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337.

9.   Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over any and all State law claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy that gives rise to the federally based claims and causes of action.

## III. VENUE

10. Venue is proper for the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1391(a), (b), and (c) and § 1402(b) because Defendant maintains its primary and relevant place(s) of business in this district.

## IV. JURY DEMAND

11. Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## V. THE PARTIES

12. The Plaintiff SANTA CORTESIANO is 59 years old, disabled, female (date of birth 09/13/1956), resident of the City of New York, County of Kings, State of New York.

13. At all times relevant herein, Plaintiff was an employee within the meaning of the ADEA, NYSHRL and NYCHRL and thus afforded protection against discrimination in employment on the basis of her age and hearing disability.

14. Defendant RIDGEWOOD BUSHWICK SENIOR CITIZEN HCC Inc. ("Ridgewood") is a domestic corporation duly authorized to conduct business in New York with its principal place of business located at 533 Bushwick Ave. Brooklyn, NY 11206.

15. Defendant Ridgewood is an "employer" within the meaning of the ADEA, NYSHRL and NYCHRL, and as such was prohibited from discriminating in employment on the basis of age and disability.

16. Defendant Glenmore Mathews was and currently is an employee of Defendant Ridgewood and was Plaintiff's supervisor at all times relevant herein.

## VI. FACTUAL ALLEGATIONS

17. Santa Cortesiano was an employee of Ridgewood for the past twenty-seven years. Cortesiano is a patient care coordinator. Cortesiano is a female of Italian decent and is 58 years old. Cortesiano worked on a fixed salary with one-hour lunch break and with no overtime pay. Cortesiano was schedule to work from 9:00 A.M. to 5:00 P.M.

18. In 2012, Glenmore Mathews was hired as director. Mr. Mathews terminated four (4) coordinators in Ridgewood due to their old age and his desire to employ younger workers.

19. Cortesiano is hearing disabled, diabetic and has fibromyalgia. Cortesiano has suffered from the aforementioned ailments for the past ten (10) years and has worked at Ridgewood while suffering from said ailments without issue.

20. Cortesiano has over 70% loss of hearing in her right ear. Mathews is aware of this disability and on several occasions has made fun of and made comments regarding said hearing impairment in the presence of employees.

21. On several occasions, Mathews would yell at Cortesiano and yell "can you hear me Santa?" while standing in front of Cortesiano. Mathews would also gesture to Cortesiano in what he joked was sign language.

22. On several occasions since Mathews' hire in 2012, Mathews forced Cortesiano to work well beyond 5 P.M. often making her stay until 10 P.M. When Cortesiano asked to leave before 10 P.M., Mathews stated if she is too old and tired to stay late she should quit. Mathews also stated as a coordinator, Cortesiano shouldn't complain, as this was her job and everyone needed to stay until their work was

done.

23. On several occasions since Mathews' hire in 2012, Cortesiano was not permitted to eat meals during designated times because Mathews warned her not to eat during non-lunchtime.

24. When Cortesiano would eat snacks during non-lunchtime to maintain her sugar, Mathews harassed her yelling "you can't eat" or "if you need to eat you can only do so at lunch" and was not permitted to eat at her desk. Mathews was sure to yell at Cortesiano to emphasize her hearing disability.

25. As a result of Mathews' constant comments to Cortesiano regarding her age and hearing impairment, employees began harassing and bullying Cortesiano.

26. Employees began mimicking Mathews' mockery of Cortesiano by attempting to sign to Cortesiano (neither Plaintiff nor Ridgewood employees know American Sign Language). Employees also yelled at Cortesiano to emphasize her hearing disability. On multiple occasions as Cortesiano was speaking on the phone, Mathews and employees would yell at Cortesiano to lower her voice.

27. On several occasions since Mathews' hire in 2012, Mathews bullied Cortesiano from his own cubicle, which was across from Cortesiano's desk and would state, "Santa do you hear me? Santa do you hear me?" knowing full well Cortesiano could hear him. When Cortesiano would say yes she could hear him, Mathews would then smirk and announce to employees that Cortesiano could hear him. Employees would then laugh and stare at Cortesiano.

28. All staff members and supervisors know that office protocol was to call each other's extension when needing to speak to each other, yet Mathews screamed

5

across the room to embarrass Santa in front of the staff members.

29. Mathews embarrassed Cortesiano since his hire in 2012 and until her termination on May 5, 2015.

30. Cortesiano became depressed, anxious and scared to go to work. On multiple occasions Cortesiano cried from humiliation as a result of Mathews' harassment and discrimination.

31. On February 12, 2014, Cortesiano had surgery to remove a tumor from her adrenal glands. Ridgewood was advised much in advance regarding this surgery. Cortesiano was out on medical leave for three months. Protocol was followed with Ridgewood's hiring department.

32. On October 25, 2014, Marie Tony ("Tony"), Cortesiano's supervisor, scheduled Cortesiano to be on call on Saturday and Sunday, however due to the overwhelming environment and stress Mathews' caused Cortesiano, this was overlooked.

33. When on call, employees must bring home a work laptop so that they can be on call. Cortesiano did not bring home a laptop. Cortesiano received a telephone call at 8:30 P.M. Friday evening from Tony inquiring as to why Cortesiano was not on call. Cortesiano informed Tony that she would find coverage and switch weekend call duty.

34. Cortesiano reached out to a co-worker Zaida Diaz and asked if she would be willing to switch her weekend call duty with Cortesiano. Zaida Diaz agreed and the weekend was covered.  It is permissible and standard practice for employees to coordinate and switch on call schedules and cover shifts for each other.

35. In retaliation against Plaintiff, two weeks later, Cortesiano was reprimanded by Tony and taken into Renata Zaitova's ("Zaitova") office, Director of Patient Services, and was written up for having Zaida Diaz cover for her on the weekend of October 25, 2014.

36. On New Year's Eve, December 31, 2014 Cortesiano was forced to work past 5 P.M. When Cortesiano requested to leave, Tony stated that she could go home when she is done. Cortesiano was not permitted to eat during said overtime. At approximately 8 P.M. Cortesiano began shaking as her sugar dropped and she began to cry. In retaliation against Plaintiff, Mathews remarked "you're too old and can't handle this job anymore" and told Cortesiano to go home.

37. On February 13, 2015, Cortesiano was forced to work until 10:00 PM until "cases were resolved" as other employees were permitted to leave earlier.

38. On or about March 2015, Mathews, present with Tony and Anita Harvey-Edwards ("Harvey-Edwards"), the Human Resource Supervisor, and Jaqueline Morales ("Morales"), asked Cortesiano to come to Mathews' cubicle to discuss a situation.

39. Harvey-Edwards stated that it had come to her attention that Cortesiano is "very loud and the office is very loud because of her loudness." Cortesiano reminded Harvey-Edwards that she has hearing loss in her right ear. Harvey-Edwards responded: "Oh, you need to go to the doctor and get that fixed." Cortesiano explained that she has gone to the doctor but cannot afford the surgery or the hearing aid. Harvey-Edwards suggested that Cortesiano take a leave of absence and Harvey-Edwards emphasized that it would be without pay.

40. In addition to and in retaliation against Plaintiff, Harvey-Edwards and Tony did not permit Cortesiano to take time off from work as it related to her disability including doctor appointments.

41. Harvey-Edwards required Cortesiano to make all doctor appointments well after 5 P.M. so that it does not interfere with work time although Cortesiano was forced to work well past 5:00 P.M. at the command of Mathews, Harvey-Edwards and Morales.

42. Cortesiano was further warned by Mathews, Harvey-Edwards and Morales that if she was required to stay at work after 5:00 P.M. and she had a doctor's appointment after 5:00 P.M, her work was a priority and attending a doctor's appointment would result in her being written up.

43. On or about March 2015, Cortesiano's doctor advised her she urgently needed a colonoscopy. Cortesiano needed to take off half of a day before the colonoscopy and a full day for the colonoscopy.

44. Cortesiano requested said days off from Zaitova and in response Zaitova berated Cortesiano for requesting said days off and scheduling doctor appointments during work time. Zaitova stated "Your medical issues are interfering with work and you should really take a leave of absence".

45. At the end of March 2015, Cortesiano's doctor requested she do a repeat colonoscopy. Cortesiano requested another day off to complete the procedure, which was scheduled three weeks later.

46. Plaintiff requested from Tony to take one half day to prepare for the procedure and the following day to undergo the procedure. Plaintiff's request was approved.

47. The day before her surgery, Cortesiano anticipated leaving by 3:00 P.M. as she had previously requested and received approval to do so. Instead, Tony directed Cortesiano to speak to Morales. In retaliation against Plaintiff leaving work for medical reasons, Morales refused to permit Cortesiano to leave work by 3:00 P.M. to prepare for the procedure and refused to let Cortesiano leave early for that day unless all of her work was completed and unless she found coverage for the time that she would be off.

48. Tony and Morales told Cortesiano that she was becoming too old for her job. In Mathews' presence, Tony attempted to pressure Cortesiano to quit her job by encouraging her to "go home and stay home- it is easier for you".

49. As a result of the fear, anxiety and humiliation, Cortesiano became faint and she could not breathe. Cortesiano pled with Mathews to let someone drive her to the hospital. Mathews permitted a co-worker to drive Cortesiano to Wyckoff Hospital where Cortesiano was admitted for 3 days. Mathews advised the co-worker to "just drop Cortesiano off" to the hospital and immediately return to work.

50. On April 28, 2015, Cortesiano told Morales that she had to leave at 4 P.M. on April 29th, 2015 for a doctor's appointment to follow up with her colonoscopy results. Morales refused to grant Cortesiano permission to leave unless all of her work was done.

51. Cortesiano implored Morales to let her attend her doctor's appointment and Morales refused to permit Cortesiano to leave early. Cortesiano became overwhelmed, stressed and started to cry. Morales then required Cortesiano to request one hour leave via a written letter. Cortesiano did in fact write a letter

requesting one hour off.

52.  On April 29, 2015, Morales reminded Cortesiano that she could not leave one hour early unless Cortesiano's cases were finished and each home attendant was covered if needed. As a result, Cortesiano was not able to leave before 5 P.M. and was not able to attend her doctor's appointment. Morales knew full well that all cases are never completed in one day and instead are worked on over the course of 2-3 days. However, Morales continued to impose discriminatory conditions solely on Plaintiff and no other employee.

53.  Morales, Tony and Mathews imposed impossible conditions on Cortesiano in order for her to take time off for her medical needs. As a result of the unreasonable conditions, Cortesiano was forced to miss several important medical appointments.

54.  On April 30, 2015 Cortesiano could not get out of bed due to her chronic pains, stress, depression and anxiety she was getting from the pressure of work. She was not able to function due to the stress, low self-esteem, depression and anxiety, and pain. As a result, she called out sick.

55.  Cortesiano sought medical attention and was instructed by her doctor to not return to work until her condition was treated. Cortesiano contacted Tony via telephone and a co-worker, Clara Germosen ("Germosen"), answered and stated Marie Tony is busy; and was asked how long Cortesiano would be out on medical leave. Cortesiano responded that her doctor instructed her to be out until June 10, 2015. Germosen asked "Why a month and 10 days off?" and hung up the phone on Cortesiano. A few hours later, Tony returned Cortesiano's call and stated that she

was too busy working on her cases.

56. On May 5, 2015**,** Cortesiano received a telephone call from Mathews' secretary, Brunilda Rodriguez ("Rodriguez"), stating that Cortesiano's personal belongings were packed in a box. Cortesiano called Tony to inquire as to why her personal belongings were packed. Tony told Cortesiano she was not aware of such and that she would investigate and could not reply to her inquiry of status.

57. Cortesiano never received a call back from Tony. Cortesiano received a telephone call from a co-worker stating that Cortesiano's cubicle (work area space) was cleared and that Supervisor Tony had taken over Cortesiano's cubicle.

58. Cortesiano then contacted Sandra Cruz ("Cruz"), Human Resource Supervisor, regarding her disability form documentation and was told that Sandra Cruz and Nancy Merced were working on this. Ridgewood then changed the voicemail of Cortesiano's voicemail to state "Santa Cortesiano, is no longer here with us and don't leave a message because she no longer works here, call the front desk. Thank you."

59. Plaintiff was subjected to ongoing discrimination on account of her age, and disability and was terminated on account of impermissible discrimination, and in retaliation for complaining about the discrimination and hostile work environment.

60. Each of the individual employees: Marie Tony, Renata Zaitova, Anita Harvey-Edwards, Jaqueline Morales and individual Defendant, Mathews, personally participated in the discriminatory and/or retaliatory conduct.

61. During the period of Plaintiff's employment, Defendants condoned and

encouraged a policy and practice of discriminating against and harassing Plaintiff on the basis of her race, national origin and age; subjected Plaintiff to a hostile work environment; failed to provide Plaintiff with an adequate means of complaint and redress; and retaliated against Plaintiff.

62. As a result of the foregoing, Plaintiff has suffered, and continues to suffer, loss of benefits and income that would have been afforded to her but for the discrimination, humiliation, damage to her career, and continuing extreme emotional distress.

63. Upon information and belief, Ridgewood employees disclosed Cortesiano's private and personal information to clients who called to inquire as to Cortesiano's employment with Ridgewood including that Cortesiano had health issues that included multiple colonoscopies and hearing issues.

64. Defendants' reasoning for terminating Cortesiano is pre-textual because, upon information and belief, Plaintiff was hearing impaired, "old" and disabled.

65. Cortesiano was terminated due to her medical disability and age.

66. Defendants would not have harassed Cortesiano but for her age.

67. Defendants would not have harassed Cortesiano but for her disabilities and perceived disabilities.

68. Defendants' actions were intended to create a working environment that no reasonable person would tolerate.

69. Defendants' actions were intended to create a hostile working environment and did in fact create a hostile work environment for Cortesiano.

70. Defendants' refused to pay Cortesiano proper wages and Defendants' failed to

pay Cortesiano overtime.

71. As a result of the foregoing, Plaintiff SANTA CORTESIANO sustained and continues to sustain to date, *inter alia*, mental injuries, emotional distress, embarrassment, temporary deprivation of property, humiliation, and deprivation of her constitutional rights.

## AS A FIRST CAUSE OF ACTION
## DISCRIMINATION AND RETALIATION UNDER THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. SECTION 12101 et. seq.

72. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

73. By reason of the foregoing, Plaintiff, because of her disability, was denied terms and conditions of employment, was subject to a hostile environment, and was discharged by Defendants in violation of the ADA.

74. Plaintiff, because she complained of discrimination based on her disability, was subject to retaliation in that she was denied terms and conditions of employment; and was discharged by Defendants in violation of the ADA.

75. Cortesiano is disabled within the scope of the Americans with Disabilities Act in that she is disabled or is perceived by the Defendants and their agents to be disabled.

76. Cortesiano suffers from a diagnosed hearing impairment.

77. Cortesiano, at all times relevant herein, was qualified to perform her job as a Patient Care Coordinator, with or without reasonable accommodation.

78. Defendants subjected Cortesiano to a pattern and practice of discrimination with regard to their practice, policies and procedures.

79. Defendants subjected Cortesiano to a severe, pervasive hostile work environment

since she complained in January of 2012, continuing to her termination on or about May 5, 2015.

80. Defendants retaliated against Cortesiano for her complaints of unequal treatment and discrimination on the basis of her disability.

81. Defendants gave preferential treatment to non-disabled Patient Care Coordinators.

82. Defendants' actions as alleged herein violate the ADA.

83. As a result of Defendants' willful, knowing and intentional discrimination and retaliation, Plaintiff sustained substantial losses in employment benefits and has suffered and continues to suffer humiliation, mental and physical distress and anguish.

84. As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

**AS A SECOND CAUSE OF ACTION**
**DISCRIMINATION AND RETALIATION UNDER THE AGE**
**DISCRIMINATION IN EMPLOYMENT ACT, 29 U.S.C. SECTION 621**

85. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

86. By reason of the foregoing, Plaintiff, because of her age, was denied terms and conditions of employment, was subject to a hostile environment, and was discharged by Defendants in violation of the ADEA.

87. Cortesiano, age fifty-nine (59), is a covered person under the ADEA.

88. Cortesiano, at all times relevant herein, was qualified to perform as a Patient Care Coordinator.

89. Defendants subjected Cortesiano to a pattern and practice of discrimination with

regard to their practice, policies and procedures.

90. Defendants' practice, policies and procedures singled out Plaintiff due to her age.

91. Defendants gave preferential treatment to employees younger than Plaintiff.

92. Plaintiff, because she complained of discrimination based on her age, was subject to retaliation in that she was denied terms and conditions of employment; and was discharged by Defendants in violation of the ADEA.

93. As a result of Defendants' willful, knowing and intentional discrimination and retaliation, Plaintiff sustained substantial losses in employment benefits and has suffered and continues to suffer humiliation, mental and physical distress and anguish.

94. As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

**AS A THIRD CAUSE OF ACTION**
**DISCRIMINATION AND RETALIATION UNDER THE NEW YORK STATE**
**EXECUTIVE LAW ("HUMAN RIGHTS LAW") SECTION 290 et seq.**

95. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

96. By reason of the foregoing, Plaintiff, because of her age and disability was denied terms and conditions of employment, was subject to a hostile environment, and was discharged by Defendants in violation of the Executive Law, Article 15, § 290 et seq.

97. Individual Defendant, Glenmore Mathews, participated in the discrimination and retaliation; and aided and abetted the discrimination and retaliation in violation of Executive Law § 290 et seq.

98. Plaintiff, because she complained of discrimination based on her age and disability was denied terms and conditions of employment, was subject to retaliation, and was discharged by Defendants in violation of the Executive Law, Article 15, § 290 et seq.

99. As a result of Defendants' willful, knowing and intentional discrimination and retaliation, Plaintiff sustained substantial losses in employment benefits and has suffered and continues to suffer humiliation, mental and physical distress and anguish.

100. As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

**AS A FOURTH CAUSE OF ACTION**
**DISCRIMINATION AND RETALIATION UNDER THE NEW YORK STATE**
**EXECUTIVE LAW ("HUMAN RIGHTS LAW") SECTION 8-101 ET SEQ.**

101. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

102. By reason of the foregoing, Plaintiff was subject to discrimination based on her gender, age and disability in that she was denied terms and conditions of employment; and was discharged by the defendants.

103. Plaintiff, because she complained of discrimination by Defendants based on her gender, age, and disability, was subject to retaliation in that she was denied terms and conditions of employment; and was discharged by the defendants.

104. Individual Defendant, GLENMORE MATHEWS, participated in the discrimination and retaliation; and aided and abetted the discrimination and retaliation in violation of HRL § 8-101 et seq.

105. As a result of Defendants' willful, knowing and intentional discrimination and retaliation, Plaintiff sustained substantial losses in earnings and other employment benefits, future pecuniary losses and has suffered and continues to suffer humiliation, mental and physical distress and anguish.

## AS A FIFTH CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

106. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

107. Cortesiano alleges herein that Defendants were aware of the conspiracy to discriminate against Cortesiano based on her age, gender/sex and disability but failed to prevent adverse employment actions from occurring.

108. As a result of Defendants' willful, knowing and intentional discrimination and retaliation, Plaintiff sustained substantial losses in earnings and other employment benefits, future pecuniary losses and has suffered and continues to suffer humiliation, mental and physical distress and anguish.

109. As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

## AS A SIXTH CAUSE OF ACTION
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

110. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

111. Cortesiano alleges herein that Defendants were aware of the conspiracy to discriminate against Cortesiano based on her age and disability but failed to prevent adverse employment actions from occurring.

112. As a result of Defendants' willful, knowing and intentional discrimination and retaliation, Plaintiff sustained substantial losses in earnings and other employment benefits, future pecuniary losses and has suffered and continues to suffer humiliation, mental and physical distress and anguish.

113. As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

## <u>RELIEF REQUESTED</u>

**WHEREFORE**, and in light of the foregoing, it is respectfully requested that the Court assume jurisdiction and:

A. Invoke pendent party and pendent claim jurisdiction;

B. A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States, the State of New York, and the City of New York

C. Award appropriate punitive damages;

D. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages, including but not limited to, the loss of past and future income, wages, compensation, seniority and other benefits of employment;

E. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including but not limited to, compensation for her mental anguish, humiliation, embarrassment, stress and anxiety, emotional pain and suffering, emotional distress and physical injuries;

F.  An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for harm to her professional and personal reputation and loss of career fulfillment;

G.  Award Plaintiff equal pay including all benefits, and all back pay, overtime and benefits thereon with interest;

H.  An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest;

I.  Empanel a jury;

J.  Award Plaintiff attorney's fees and costs; and

K.  Award Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful practices;

Dated: December 28, 2015

Respectfully Submitted,

THE ABOUSHI LAW FIRM, PLLC
*Attorneys for Plaintiff*

By:  /s/Tahanie A. Aboushi
Tahanie A. Aboushi, Esq (TA-6529)
1441 Broadway Suite 5036
New York, New York 10018
Telephone: (212) 391-8500
Facsimile: (212) 391-8508
Tahanie@Aboushi.com